NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,                      )
                                       )
          Appellant,                   )
                                       )
v.                                     )     Case No. 2D16-5322
                                       )
KEVIN RATLIFF,                         )
                                       )
          Appellee.                    )
_____)

Opinion filed November 3, 2017.

Appeal from the Circuit Court for Pinellas
County; William H. Burgess, III, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Kiersten E. Jensen,
Assistant Attorney General, Tampa,
for Appellant.

Howard L. Dimmig, II, Public Defender,
and Maureen E. Surber, Assistant Public
Defender, Bartow, for Appellee.


SILBERMAN, Judge.

          The State seeks review of a postconviction order declaring

unconstitutional two life sentences for the crimes of first-degree murder and attempted

first-degree murder which Kevin Ratliff committed when he was a juvenile.  The

postconviction court granted relief under Miller v. Alabama, 567 U.S. 460 (2012), and

Graham v. Florida, 560 U.S. 48 (2010), as interpreted in Atwell v. State, 197 So. 3d 1040 (Fla. 2016). The State argues that the court erred by granting relief without considering whether, due to the possibility of parole, Ratliff's life sentences constituted "de facto" life sentences. We reject this argument and affirm.

In Miller, the Supreme Court held that it was a violation of the Eighth Amendment to impose a mandatory sentence of life without parole for a juvenile. 567 U.S. at 479. In Graham, the Supreme Court held that it was also unconstitutional to impose a sentence of life without parole for a juvenile convicted of a nonhomicide offense. 560 U.S. at 74-75. In Atwell, the Florida Supreme Court held that Miller and Graham also apply in cases in which a defendant sentenced to life in prison is eligible for parole in Florida. 197 So. 3d at 1050.

The question on appeal is whether, under Atwell, juveniles serving life sentences with parole eligibility are entitled to relief under Miller and Graham only if their presumptive parole release dates (PPRD) results in their sentences being "de facto" life sentences. We answer this question in the negative.

In Atwell, the juvenile defendant had been convicted of first-degree murder and sentenced to a mandatory term of life in prison with parole eligibility. 197 So. 3d at 1041. The defendant's PPRD was 2130 which the court noted exceeded his life expectancy and virtually ensured he would spend the remainder of his life in prison. The question before the court was whether the defendant's life sentence was constitutional under Miller. Id.

The court answered this question in the negative, stating, "We conclude that Florida's existing parole system, as set forth by statute, does not provide for

- 2 -

individualized consideration of Atwell's juvenile status at the time of the murder, as required by Miller, and that his sentence, which is virtually indistinguishable from a sentence of life without parole, is therefore unconstitutional." Id. The court explained three reasons for its holding. First, it was consistent with its prior cases which followed the spirit of Miller and Graham as opposed to "an overly narrow interpretation." Id. (citing Henry v. State, 175 So. 3d 675 (Fla. 2015), cert. denied, 136 S. Ct. 1455 (2016)).

Second, it was consistent with the mandate in Miller and Graham that courts sentencing juveniles consider how they are different and how those differences mitigate against life sentences. Id. at 1045. The court explained that Miller and Graham would not necessarily require resentencing if parole was available for "certain juvenile offenders 'whose crimes reflected only transient immaturity—and who have since matured.' " Atwell, 197 So. 3d at 1048 (quoting Montgomery v. Louisiana, 136 S. Ct. 718, 736 (2016)). However, Florida's existing parole system does not meet this standard because it gives primary consideration to the serious nature of the offense and the defendant's criminal record. Id. at 1049. "Importantly, unlike other states, there are no special protections expressly afforded to juvenile offenders and no consideration of the diminished culpability of the youth at the time of the offense." Id.

The court's third reason for its conclusion was that it was consistent with Florida's post-Miller and Graham legislative intent. Id. at 1042. "Rather than offer parole as a means of complying with the principles established by the Supreme Court, the Florida Legislature chose instead to enact a wholly new and distinct sentencing framework for juvenile offenders, offering term-of-years sentencing options for trial courts and providing for a subsequent judicial review of lengthy sentences." Id.

The court thus quashed the decision upholding the defendant's life sentence and remanded for resentencing under chapter 2014-220, Laws of Florida. Id. Under that framework, the juvenile's sentence would be reviewed after twenty-five years by a judge who must consider "among other factors, the juvenile offender's youth and its attendant characteristics at the time of the offense, the opinion of the victim or the victim's next of kin concerning the release of the juvenile offender from prison, and whether the juvenile offender remains at the same level of risk to society as he or she did at the time of the initial sentencing." Id. at 1043.

In Marshall v. State, 214 So. 3d 776, 777 (Fla. 2d DCA 2017), this court relied on Atwell to hold that a juvenile defendant sentenced to ninety-nine years with parole eligibility was entitled to relief under Graham. This court explained that the supreme court had clarified that it is not necessary for term-of-years sentences to be "de facto" life sentences for Graham to apply. Id. at 778 (citing Kelsey v. State, 206 So. 3d 5, 10 (Fla. 2016)). Instead, "the Eighth Amendment will not tolerate prison sentences that lack a review mechanism for evaluating this special class of offenders for demonstrable maturity and reform in the future." Id. (quoting Henry, 175 So. 3d at 680). And this court explained that, in Atwell, the supreme court concluded that Florida's parole system does not meet this standard. Id.

While the reasoning of Marshall is certainly applicable to this case, this court has not expressly considered the State's argument about Ratliff's PPRD. Three of our sister courts have considered the argument, and there is a split among the districts. The Fifth District has determined that a juvenile defendant sentenced to life in prison with parole is only entitled to resentencing if his or her PPRD results in a "de facto" life

sentence.  See, e.g., Williams v. State, 198 So. 3d 1084, 1086 (Fla. 5th DCA 2016); Stallings v. State, 198 So. 3d 1081, 1082 (Fla. 5th DCA 2016).

The Fifth District concluded that Atwell turned in part on the fact that the defendant's PPRD exceeded his life expectancy and virtually ensured he would spend the remainder of his life in prison.  Williams, 198 So. 3d at 1085.  In so doing, the district court relied on the language in Atwell providing that "Florida's existing parole system, as set forth by statute, does not provide for individualized consideration of Atwell's juvenile status at the time of the murder, as required by Miller, and that his sentence, which is virtually indistinguishable from a sentence of life without parole, is therefore unconstitutional."  Id. at 1086 (emphasis added) (quoting Atwell, 197 So. 3d at 1041).

Conversely, the Third and Fourth Districts have concluded that Atwell requires resentencing regardless of a defendant's PPRD.  See, e.g., Reid v. State, 42 Fla. L. Weekly D1216, D1217 (Fla. 3d DCA May 31, 2017); Carter v. State, 215 So. 3d 125, 127 (Fla. 3d DCA 2017); Michel v. State, 204 So. 3d 101, 101 (Fla. 4th DCA 2016), review granted, No. SC16-2187, 2017 WL 3484282 (Fla. Jan. 18, 2017).  In so doing, these courts determined that Atwell turned on the Florida parole system's inadequate review process.  See Reid, 42 Fla. L. Weekly at D1217; Carter, 215 So. 3d at 127; Michel, 204 So. 3d at 101.

We conclude that the Third and Fourth Districts have adopted the better interpretation of Atwell.  We understand the Fifth District's decision to give meaning to the language in Atwell focusing on the fact that, due to his PPRD, the defendant would not be released during his natural lifetime.  However, we conclude that Atwell turns on

- 5 -

the conclusion that Florida's parole system is not sufficient to remedy the constitutional violations discussed in Miller and Graham.

Our holding is consistent with two of the supreme court's post-Atwell decisions addressing the breadth of Miller and Graham. In Johnson v. State, 215 So. 3d 1237, 1239, 1242 (Fla. 2017), the supreme court held that the defendant's 100-year sentence was unconstitutional under Graham despite the availability of early release due to gain time. The court said the State's argument that the availability of gain time rendered the sentence constitutional was based on too narrow a reading of Graham. Id. Instead, the proper question was whether the sentence "provide[s] an opportunity for early release that is: (1) meaningful, (2) based on a demonstration of maturity and rehabilitation, and (3) during his or her natural life." Id.; see also Kelsey, 206 So. 3d at 10 ("After we made clear that Graham does indeed apply to term-of-years sentences, we have declined to require that such sentences must be 'de facto life' sentences for Graham to apply.").

In conclusion, under Atwell, juveniles serving life sentences with parole eligibility are entitled to relief under Miller and Graham regardless of whether their PPRD results in their sentence being a "de facto" life sentence. Accordingly, we affirm the postconviction court's order. We also certify conflict with the Fifth District's decisions in Williams and Stallings.

Affirmed; conflict certified.


NORTHCUTT and MORRIS, JJ., Concur.

- 6 -